We'll move on to the next case, Paca v. City of New Haven. Thank you, Your Honors. May it please the Court, Attorney Steve Jacobs for the plaintiff, Marcus Paca. There are genuine issues of material fact which warrant a trial on the merits. Taking first the intimate association claim, the couple that gets hired together gets fired together. Husband and wife served together in the Harp Administration. Husband had only once been reprimanded, and reprimand was subsequently purged from his personnel file. His performance had been applauded by the mayor. Then things went sour for both the husband and wife at the same time. The wife publishes a memo to the Board of Boulders Finance Committee, thus establishing the necessary predicate for the... What is there in the record as to what the wife said? What was so supposedly controversial about what she said? It can be found in the form of an evidential admission in the pleadings. This came out through the appellee's brief, where the appellee cited to the allegation of the complaint, in which the plaintiff cited to the memo and its substance, to which the city replied that it admitted that there was a memo published. It left the... Is there anything that tells us what was in the memo? What did the memo say? Yes, there is. Yeah. If you could just bear with me one second. In fact, I believe your brief says that the substance of the memo was not part of the record below. That's at page six of your brief. That is correct, except that the defendant, having cited to the pleadings, brought that into the case, brought that into this appeal, to which I responded in my reply brief. And the substance of the memo is cited as an evidential admission in the defendant's brief, in which the city's pleading stated that the memorandum attacked the mayor's budget, disrupted the orderly process, operations of the budget process, undermined the mayor, and failed to adhere to the mayor's policy to speak with one voice. That's a characterization. I mean, this is on summary judgment. I'm a little confused as to what you've got as evidence that is admissible. Well, I would claim that as an evidential admission. The factual record does not, that is, the deposition transcripts, do not, in any statements that were submitted, do not publish the substance of that memorandum. However, I would submit that the pleadings constitute an evidential admission of their substance, and therefore are appropriate for consideration in the context of a motion for summary judgment, and by this court on de novo review. So returning to the argument. So your theory is that the city fired the plaintiff because his wife wrote a memo attacking the mayor's budget. And I think you have to consider that fact in the context of their virtually simultaneous firing. I'm sorry. I can't follow you. This is Judge Winsor. Yes, you are. You're not answering Judge Chin's question. Is that your theory? Yes, it is my theory that my client was fired because his wife had published a memo that offended the mayor, and the substance of that memo, while there is no evidence of the substance, there is a characterization, as Judge Chin pointed out, of the substance. Well, I didn't point out anything. I was just repeating what you had suggested in your answer to an earlier question, that that's apparently what the memo did. The fact of the matter is, Mandy Blue was fired because of the publication of this memo. Even if, let's assume, Arduendo, that we don't know the substance of that memo, we know that it was something about it was offensive to the mayor because it led to Mandy Blue's firing. And we know that Marcus Paca's firing occurred at the same time as Mandy Blue's firing. So you can call it a coincidence. It also comes on the heels, well, I shouldn't say it comes on the heels. The mayor, at the time she fired Mr. Paca, read from a text in which she cited grounds for terminating Mr. Paca. The question is, were those legitimate reasons, or were they pretexts for firing him for a bad reason? The only way we know that is by getting Judge Mayor Harp in front of a jury and having her subjected to cross-examination and eyeballed by the jury. It's easy to say, it's easy for the city to say, look, this is what she said, therefore it must be true, and that's why he was fired, not because of his affiliation with his wife. But cases are not decided on the basis of self-serving statements. Cases are not decided on the basis of, people are not fired typically on the basis of mother's wit. And that's what we dealt with in the district court. But it's the reason why this case, which raises these numerous issues of, genuine issues of material fact, should be presented to the jury. As for the claims relating to the employee handbook, I will reserve those for rebuttal. All right, thank you. We'll hear from counsel for the city. Good morning. May it please the court, my name is Alexandria Vosiel, and I'm representing the city of New Haven. The court should affirm the summary judgment on the right of association claim, because there was insufficient evidence to create an issue of fact as to whether or not Marcus Paco was terminated because of his wife's protected conduct. And it was insufficient for two reasons. First, a right to association claim under the First Amendment exists only where the claim alleges retaliation for activities that are themselves protected by the First Amendment. Here, the allegations of the complaint, which are framing this case, the plaintiff alleges that he was terminated because his wife wrote a memo that disclosed another employee had improperly outsourced grant writing services. That's the claim. But there's no evidence that this memo made any such disclosure. There's no evidence of it. The only evidence whatsoever regarding the memo is that it was prepared in response to a request by the Board of Alders Finance Committee. And under Garcetti, which explains that... So the plaintiff is relying apparently on what he characterizes as an evidentiary admission in your memo of law below that the memo attacked the mayor's budget. Is that sufficient to create an issue of fact? Well, no, because there's two different issues. And the record doesn't play this out because the plaintiff never presented that argument. So there's no evidence before the district court as to what the memo was. But the memo was 11 pages long and addressed a lot of things. But ultimately, the admission is that she was terminated because she was insubordinate in violating a policy by the mayor regarding the budget. There's nothing... May I just ask... Pardon? Excuse me. Since, you know, there has been some discovery in all of this, were there attempts on your part to have the defendant produce the memo? Is there any...the plaintiff produced the memo. Is there any explanation for why the memo is not part of the record? None, Your Honor. The memo was part of the discovery. Well, did you see production of it? Oh, yes. I even produced it. And it was produced? Oh, yes. Oh, yes. It was a source of much discussion. But the plaintiff chose not to put it in, and I wasn't going to put it in. So, no, it was produced. It was discussed. Well, let's then get to the plaintiff's argument in response to some questions of Judge Chin that there was a sufficient acceptance of the characterization of the memo on your part to make that an admission. Do you want to tell us why we should or shouldn't be persuaded by that? Well, a review of the answer, you can see that there was no admission that we fired Mendy. This has nothing to do with Marcus. But there's no admission that we fired Mendy because he had complained about outsourcing, improper outsourcing by another employee. And that's the claim. There's no admission of that. I mean, you can read the answer, which is set forth in the joint appendix. We don't admit that. We admit that she submitted a memo, and then we explain that we terminated her for insubordination for an unrelated reason. The claim here, again, you have to show that there's protected conduct. So, the claim of protected conduct on the part of the plaintiff is that she disclosed a violation of the city charter. She disclosed the improper outsourcing of grant writing services to a political supporter of the mayor. That's the claim. And there's no evidence of it. The idea that whether or not Mendy Blue was insubordinate, well, that's because she spoke against the budget at the wrong time. That's not protected conduct. There's no evidence about that being protected conduct. And it's certainly not alleged. The plaintiff is trying to change the discussion on appeal as opposed to what was presented at the district court level and what's alleged. So, no, we don't, you know, I don't think there's any question that the admission does not create an issue of fact. It's been adamantly denied that she was fired for this statement, any alleged statement regarding improper outsourcing. And, of course, the claim, you know, again, we have to go back, too, to the next piece, which is not only does it have to be protected conduct, and again, there's no evidence that this outsourcing ever occurred, that she engaged in this conduct, but the evidence is that she submitted the memo in response to a request by the Board of Alders, which would put her as, in terms of engaging her official duties. And therefore, under Garcetti, it's not protected conduct anyway. She said, she, or according, sorry, the plaintiff claims that she submitted this memo in response to a Board of Alders request. That's part of her official duties, and it's not protected. And then the second piece of why it's our position that there's insufficient evidence that Mr. Paco was terminated for this reason, and again, there's certainly no admission that he was terminated for anything to do with his wife, there's absolutely no evidence of that. There has to be some sort of tangible proof that Mark Paco was terminated because of something his wife did. And here, unlike in Adler, there's no evidence of that. There's no evidence of any negative attention or embarrassment brought on by any statements regarding Ms. Blue about this improper outsourcing. There's no evidence that ties it in whatsoever. And again, unlike in Adler, there's no evidence to contradict this. I think he's urging us to infer that from the timing, from the fact that they're fired one day after each other. And your response to that is? Yeah, one, it's not enough. I mean, it requires speculation. You have to have some sort of tangible evidence more than timing. The timing, as borne out in the record, is because two separate incidents, you know, were going on at the same time, and they both came back from vacation and work at the same time and were terminated the same day. But two separate incidents going on that just happened to come to attention at the same time. Well, even if it could clear the prima facie case, your response is you've come forward with the reason why he was fired, namely the disclosure of information and then the mayor's view that he lied to her about it. Is that where we are, that you think you've met your burden and he has to show that was pretextual? Well, absolutely. Again, I don't think we even get there because I don't think he's met his burden. But if you do, then, yes, we present a legitimate reason. They've admitted in the local rule statement that the mayor did not believe him. In other words, they admit that the mayor believes he lied. So that's not disputed. You know, we don't have to prove, you know, whether or not the mayor, you know, one of the challenges in the breach of contract claim, for instance, was whether or not we did a sufficient investigation. Well, the mayor spoke to Marcus Paco himself. Her deputy chief spoke to Marcus Paco. We also spoke to two other people. You know, she did her own investigation in terms of determining whether or not she believed him. And not only did he disclose these, but she felt he lied to her. And the plaintiff admits that. There's just no dispute. So, yes, when you have, this is her political appointee, her, you know, the person who speaks to her on labor relations matters, and she believes he lied to her. And not only would that be a legitimate grounds for termination to defeat the First Amendment claim, but it would also defeat the breach of contract claim. One minute. Sorry? One minute. So, yes, so we believe that we have to support the legitimate reason. You know, alternatively, I know the local court didn't rule on the issue, but, you know, there's still the we would have made the same decision anyway argument. And we believe that that would, again, support summary judgment. There is, you know, some authority that, you know, on summary judgment, you can still decide whether or not that defense applies. And we believe we've presented more than enough evidence that the reason why he was terminated is because he lied about disclosing these emails. In terms of breach of contract claim, we have submitted evidence and argument to the district court, of course, that the agreement itself does not say that progressive discipline has to be followed. It specifically says, you know, if there's a serious offense, you can skip it. And the trial court properly found that there was a serious offense. Again, this is, you know, the person who speaks on behalf of the mayor, and she didn't believe him anymore. And that, as a matter of law, can be decided to be a serious offense for an immediate termination. Alternatively, we've also believed that the court can affirm on the grounds that the progressive discipline provision of the employee handbook does not apply to mayoral appointees anyway. Because under the charter, the mayoral appointees, including Marcus Papa, could be dismissed at the whim of the mayor. I mean, he served at the pleasure of the mayor, and he could be dismissed at the pleasure of the mayor. And that charter is the binding document for the city. And if there's ever, I don't believe there is a conflict, but to the extent that there's belief in some sort of conflict between the handbook and the city charter, then the city charter necessarily prevails because it's a governing document for the city. All right, thank you. We have your argument. We'll hear the rebuttal. Yes, thank you, Your Honor. Just taking the last matter first, the city cited to that section of the charter which describes the scope of the mayor's duties and her right to appoint certain officials and the composition of her staff and her right to appoint them. That, I would submit, does not establish, standing alone, that Mr. Packa served at the pleasure of the mayor  where the position of the labor director fell within the city hierarchy. We don't know that the position of labor director fell within the mayor's staff. So, standing alone, that doesn't establish that fact. The fact that the mayor didn't. Yes, Your Honor. I have a question for you. Am I correct in understanding that the only evidence you have that the husband was fired based on the conduct of his wife is the proximity of the two firings? It is. First, you need that First Amendment predicate. We claim through that evidence. No, but to the extent you're claiming that his firing is based on his, on her conduct, and we assume you can prove First Amendment, we assume all that, that the basis for that is the proximity of the two firings. That is correct. Right now. The firings occurred within half an hour, perhaps less, of each other. I understand the chronology. Now my question to you is the defendants have come forward with a distinct reason for his firing, namely the disclosure and then the lying, or the mayor's perception that he lied to her about it. How do you demonstrate that that's protectual? What evidence would support that conclusion? Well, first of all, the vagueness of the mayor's testimony as to the scope of that investigation. She said, I heard this from this guy, I heard this from that guy, and putting all of that aside, I'm just going to go with my mother's wit and decide that I can't trust you anymore. And that's really what it came down to. So the question is, do you just believe her self-serving statements, or do you give Mr. Packa an opportunity to cross-examine her in front of a jury and let the jury decide whether her self-serving statements are in fact the truth or were intended to hide the fact that she was firing this guy in violation of his right to intimate association? Is there evidence that he also purportedly lied to another person on the mayor's staff even before he spoke to the mayor? I thought there was evidence to that effect, too. There was the claim relating to the flash drives and what happened to the flash drives and whether Mr. Packa himself was responsible for disclosing these confidential attorney-client memos to the subpoena. All right. I don't want to keep you past your time. I think I understand the argument. Thank you. Okay. Thank you very much. Thank you. We'll reserve decision.